UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 08-048 (RCL) |
| | ) | |
| JOSE FERNANDO ROMERO MEJIA | ) | **Filed Under Seal** |
|     a/k/a "Morocho," a/k/a "Alex," | ) | |
|     and a/k/a "La Negra," | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**GOVERNMENT'S NOTICE OF POTENTIAL CONFLICT OF INTEREST UNDER RULE 44(c) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE AND RULE 1.9 OF THE DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT**

**COMES NOW** the United States of America, by and through the undersigned attorney, to notify the Court of a potential conflict of interest under Rule 44(c) of the Federal Rules of Criminal Procedure and Rule 1.9 of the District of Columbia Rules of Professional Conduct.

**BACKGROUND**

Defendant Jose Fernando Romero Mejia, a/k/a "Morocho," a/k/a "Alex," a/k/a "La Negra" (hereinafter "Romero Mejia") was a high ranking member of the Cuesta Leon Drug Trafficking Organization (hereinafter "Cuesta Leon DTO"). Specifically, Romero Mejia was the right-hand man to the leader of the Cuesta Leon DTO, Josue Cuesta Leon, a/k/a "Don Julio," a/k/a "Josue," a/k/a "El Viejo," a/k/a "El Gordo" (hereinafter "Cuesta Leon"). Romero Mejia and Cuesta Leon are charged with violating Title 21, United States Code, Section 960a, or conspiring to distribute five kilograms or more of cocaine, knowing and intending to provide

anything of pecuniary value to a person or organization that engages in terrorist activity and terrorism. Romero Mejia is being represented by court-appointed attorney Joseph Conte, Esq.

Jose Maria Corredor-Ibague, a/k/a "Boyaco," a/k/a "Chepe" (hereinafter "Corredor-Ibague") was the leader of a Drug Trafficking Organization ("DTO") responsible for the manufacture and transportation of cocaine from Colombia to various countries. To conduct these drug trafficking activities, Corredor-Ibague paid money to the FARC. Consequently, Corredor-Ibague was indicted on similar charges as Romero Mejia and was initially represented by Mr. Conte. Upon Corredor-Ibague's request for new counsel, the court appointed Ron Earnest, Esq. as substitute counsel. It has come to the Government's attention that Corredor-Ibague may have specific and detailed knowledge about Romero Mejia's and Cuesta Leon's drug trafficking activities.

Corredor-Ibague's DTO and the Cuesta Leon DTO operated out of the same regions (Vaupes and Guaviare) and towns (Calamar and Miraflores) in Colombia, which were known to be centers of coca plant growing and cocaine production. Within the same time period, both organizations utilized an airstrip in Caruru, Colombia – an area that was controlled by the FARC's 1st Front – to send cocaine to various destinations, including Suriname and Guyana. Indeed, both organizations purchased cocaine from and paid taxes to the FARC's 1st Front. Additionally, the Cuesta Leon DTO and Corredor-Ibague's DTO occasionally borrowed each other's planes and shared pilots to transport cocaine shipments. Both organizations relied upon the same contacts in Suriname and Guyana, often using the same brokers and selling cocaine to the same clients.

## **ARGUMENT**

The Sixth Amendment guarantees a defendant the right to the assistance of counsel, and there is a "presumption in favor of [the defendant's] counsel of choice." *Wheat v. United States*, 486 U.S. 153, 160 (1988); *see United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978) ("[A] defendant must be afforded a reasonable opportunity to secure counsel of his choosing."). The right to choose one's own counsel, however, is not absolute, and certain substantial and legitimate interests may require courts to interfere with defendant's choice of counsel. *See Wheat*, 486 U.S. at 159 (a defendant may not insist on the representation of an attorney under certain circumstances); *United States v. Rettaliata*, 833 F.2d 361, 362 (D.C. Cir. 1987) (right to counsel not "absolute").

A conflict of interest – whether actual or potential – may impede effective representation by the defendant's counsel of choice. *See Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038, 1055 (D.C. Cir. 1984) (disqualification may be mandated where a conflict of interest - potential or actual - undermines the court's confidence in counsel's ability to serve his client with "undivided loyalty"); *United States v. Childress*, 731 F. Supp. 547, 549 n.2 (D.D.C. 1990) (disqualification warranted where potential conflict could become an actual conflict). If the trial court "knows or reasonably should know" that a potential conflict of interest exists, it must initiate an inquiry. *Cuyler v. Sullivan*, 446 U.S. 335, 346-47 (1980); *Wheat*, 486 U.S. at 160 (courts should make an inquiry when "alerted to possible conflicts of interest"); *but see Mickens v. Taylor*, 535 U.S. 162, 176 (2001) (limiting *Sullivan* to cases of multiple representation and leaving "open" the question of whether *Sullivan* extends to cases of successive representation). As such, the government is alerting the court to a potential conflict of interest so that the issue

can be addressed and, if necessary, substitute counsel can be assigned to Romero-Mejia.

A conflict of interest may arise where there is multiple representation by the defendant's choice of counsel, thereby requiring the court to "promptly inquire about the propriety of the joint representation and [] personally advise each defendant of the right to the effective assistance of counsel." FED.R.CRIM. P. 44(c). Likewise, successive representation may give rise to a conflict of interest. Rule 1.9 of the District of Columbia Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse unless the former client gives informed consent." Upon a showing of "serious potential for conflict," the presumption in favor of a defendant's counsel of choice "may be overcome," and the district court may disqualify counsel. *Wheat*, 486 U.S. at 164.

Disqualification is warranted if counsel's representation of his current client involves a matter that is "substantially related" to his representation of a former client, *Childress,* 731 F. Supp. at 550, such as where information acquired while representing the former client may be used in representing the current client. *See United States v. Ostrer*, 597 F. 2d 337, 339-40 (2d Cir. 1979) (disqualification warranted if counsel "is potentially in a position to use privileged information obtained during prior representation"); *see also Porter v. Singletary*, 14 F.3d 554, 561 (11th Cir. 1994) ("An attorney who cross-examines a former client inherently encounters divided loyalties."); *United States v. Pizzonia*, 415 F. Supp. 2d 168, 177 (E.D.N.Y. 2006) ("An attorney's former representation of a government witness on a substantially related matter can create the potential for serious conflict of interest warranting disqualification since the attorney may be limited in impeaching a former client or attacking his credibility on summation without

becoming an unsworn witness.").

This Court has held that a violation of Rule 1.9 is sufficient grounds for disqualifying an attorney who previously represented a client in a substantially related matter. *See Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 21-22, 26-27 (D.D.C. 2008) (Lamberth, C.J.). In the instant matter, a Rule 1.9 violation is likely given the following: (1) Corredor-Ibague is Mr. Conte's former client; (2) there is a substantial relationship between the subject matter of Mr. Conte's prior representation of Corredor-Ibague and current representation of Romero-Mejia because Corredor-Ibague's DTO was intertwined with the Cuesta-Leon DTO (operating in the same FARC-controlled area and using the same airstrip, aircraft, pilots, brokers, and buyers) and Corredo-Ibague can provide information on Romero-Mejia's drug trafficking activities; and (3) Mr. Conte "had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of [Corredor-Ibague]." *Id*. at 23. Indeed, this Court has disqualified a defendant's attorney who previously represented his co-conspirator in an earlier, related proceeding due to a potential conflict of interest. *See Childress*, 731 F. Supp. at 549-51 (where attorney may have learned confidential information during Public Defender Service's prior representation of former client, disqualification warranted because of risk that the potential conflict would become an actual conflict during trial); *see also United States v. Kenney*, 911 F.2d 315, 321 (9th Cir. 1990) (mere possibility that a client may be able to provide information to the Government against a former client is sufficient to give rise to a potential conflict of interest warranting disqualification); *United States v. Provenzano*, 620 F.2d 985, 1005 (3d Cir. 1980) (attorney's access to privileged information during prior representation was "conclusively presumed"). Thus, because of Mr. Conte's likely access to privileged information during his

prior representation of Corredor-Ibague, Mr. Conte's loyalties may be divided between his former client and his current client, thereby affecting his representation of Romero Mejia. Consequently, the Government respectfully requests that the Court inquire into this potential conflict of interest.

The Sixth Amendment right to conflict-free counsel may be voluntarily waived if, upon inquiry by the court on the record, each client has a clear understanding of the facts and agrees to waive a potential or actual conflict of interest. *See Holloway v. Akansas*, 435 U.S. 475, 483 n.5 (1978); *United States v. Harris*, 846 F. Supp. 121, 130 (D.D.C. 1994) (Lamberth, J.) (where counsel is court-appointed in a criminal matter, waiver of a conflict should be determined on the record after "full inquiry" by the court); *Childress*, 731 F. Supp. at 552 (defendant's waiver of conflict accepted by the court). The court, however, is not obligated to accept the waiver of a potential or actual conflict, and district courts are afforded "substantial latitude in refusing waivers of conflicts of interest." *Wheat*, 486 U.S. at 161-63. In evaluating whether to accept a waiver, the court must consider ethical standards, attorney-client privilege, as well as the right to a fair trial and a fairly rendered verdict. *Id*. at 159-62; *United States v. Moscony*, 927 F.2d 742, 748-49 (3d Cir. 1991) (the court must consider: the defendant's rights to conflict-free representation and counsel of choice; the former client's right not to have privileged information revealed; and defense counsel's ethical obligation to advocate for his current client but "not [] work against the interests of his former clients, and [] not reveal, to their disadvantage, information relating to his prior representation of them."); *United States v. Mazzaferro*, 865 F.2d 450, 456 (1st Cir. 1989) ("[T]he loyalty a lawyer owes a client is so basic to rendering effective assistance that it should not be sullied even by the appearance of a possible conflict.").

Even if a waiver is obtained, disqualification of counsel may be necessary, especially in light of the "apparent willingness of Courts of Appeals to entertain ineffective assistance claims from defendants who have specifically waived the right to conflict-free counsel." *Wheat*, 486 U.S. at 161-62; *see Moscony*, 927 F.2d at 749 (3d Cir. 1991) ("[T]he various rights and duties of the attorney clash when a defendant seeks to waive his right to conflict-free representation in circumstances in which the counsel of his choice may have divided loyalties due to concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a government witness."). As such, despite any waiver of this potential conflict by Romero-Mejia and Corredor-Ibague, Mr. Conte's disqualification may nevertheless be warranted because, should this potential conflict become an actual conflict at any point in his representation, Romero-Mejia may be denied the effective assistance of counsel. *See Sullivan*, 446 U.S. at 349-50 (no need to demonstrate prejudice if defendant shows that a conflict of interest affected adequacy of his representation); *Harris*, 846 F. Supp. at 126-27 ("Prejudice is presumed if the movant establishes that his attorney had an actual conflict of interest that adversely affected the attorney's performance.") (internal quotations and citation omitted).

Where, as here, the relationship between the attorney and the client is not so advanced that the appointment of new counsel would damage the defendant's defense, substitution of counsel may be appropriate. *See United States v. Davis*, 780 F.Supp. 21, 24 (D.D.C. 1991) ("Given the early stage of this case, another attorney can enter the case on the defendant's behalf and prepare for trial without any disadvantage."); *Kenney*, 911 F.2d at 322 (where potential of conflict of interest existed, district court did not abuse its discretion in disqualifying counsel where, among other things, the court found that the attorney-client relationship was "not so

advanced that forcing Kenney to find new counsel would be damaging to his defense.").

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the United States respectfully asks the Court to inquire into this potential conflict of interest.

Respectfully submitted,

_____
Mary E. Mogavero
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
(202) 305-2795
Mary.Mogavero@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of this pleading was emailed to defense counsel Joseph Conte, Esq., on August 14, 2009.

                                                                     _____

                                                                     Mary E. Mogavero