## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **1:08-CR-00048 (RCL)** |
| | : | |
| | : | |
| **JOSE CUESTA LEON,  et al.** | : | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### MOTION TO DISMISS INDICTMENT

### I.  INTRODUCTION

In March 2006, Congress passed 21 U.S.C. § 960a as part of the USA Patriot Reauthorization

and Improvement Act of 2005.   This statute, referred to as "narco-terrorism," makes it unlawful to:

> . . .engage. . .in conduct that would be punishable under section 841(a)(1) of this title
> if committed within the jurisdiction of the United States, or attempts or conspires to
> do so, knowing or intending to provide, directly or indirectly, anything of pecuniary
> value to any person or organization that has engaged or engages in terrorist activity
> (as defined in section 1182(a)(3)(B) of Title 8) and terrorism (as defined in section
> 2656f(d)(2) of Title 22 . . . .

21 U.S.C. § 960a.

There appear to be few cases which have included charges under this statute.[1]

Mr. Cuesta Leon and Mr. Romero Mejia move to dismiss the indictment for the following

three reasons.  First, the indictment is defective because it does not plead all the elements and fails to

---

[1]  The defendants are aware of the following cases:  *United States v. Jimenez-Naranjo*, No. 05-235 (D.D.C. Sept. 25, 2007); *United States v. Mohammed*, NO 06-357 (D.D.C. Jan. 23, 2008); *United States v. Khan*, No. 08-CR-621 (S.D.N.Y. Oct. 21, 2008); *United States v. Rendon-Herrera*, No. 04-CR-962 (S.D.N.Y June 16, 2009).   It does not appear that the issues raised in this motion have been litigated in any of those cases.

state an offense against the United States.  Second, the application of the statute to the defendants in this case violates the Due Process Clause of the Fifth Amendment.  Third, 21 U.S.C. §960a is unconstitutional facially and as applied in this case, in part, because Congress exceeded its authority to legislate the particular extraterritorial "narco-terrorism".

## II. <u>THE  INDICTMENT  IS  DEFECTIVE</u>

### a. The indictment is defective because it does not allege all the elements of the offense and does not state an offense against the United States.

Federal Rule of Criminal Procedure 7(c)(1) states that "[t]he indictment. . . must be a plain, concise, and definite statement of the essential facts constituting the offense charged."  To be valid, the indictment must: (1) allege the essential facts constituting the offense; (2) allege each element of the offense so that fair notice is provided; and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense. <u>See</u> *Russell v. United States*, 369 US 749, 764 (1963); *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004); *United States v. Sunia*, 643 F.Supp.2d 51, 77 (D.D.C. 2009).

Congress enumerated the bases for asserting jurisdiction over the conduct prohibited by 21 U.S.C. § 960a.[2]  The jurisdictional elements of the statute set forth the types of conduct which establish a sufficient nexus with the United States.  The jurisdictional section is the hook which

_____

[2] While Congress expressly provided five bases for asserting jurisdiction under the statute, only the first four bases in the section set forth activities or conduct which establish some territorial nexus with the United States, and would arguably support subject matter jurisdiction over the conduct – thus satisfying the Fifth Amendment due process requirements.  The 5th basis appears to relate entirely to personal jurisdiction over the person, rather than jurisdiction over the conduct.   <u>See,</u> Brian A. Lichter, "*The Offenses Clause, Due Process, and the Extraterritorial Reach of Federal Criminal Law in Narco-Terrorism Prosecutions*", NORTHWESTERN U. L. Rev.  Vol 103, No. 4 at pp. 1956-57.

purports to give the United States a legitimate interest in prosecuting the extraterritorial § 960a

conduct.  Specifically, 21 U.S.C. § 960a(b) states:

> There is jurisdiction over an offense under this section if--
>
> **(1)** the prohibited drug activity or the terrorist offense is in violation of the criminal laws of the United States;
>
> **(2)** the offense, the prohibited drug activity, or the terrorist offense occurs in or affects interstate or foreign commerce;
>
> **(3)** an offender provides anything of pecuniary value for a terrorist offense that causes or is designed to cause death or serious bodily injury to a national of the United States while that national is outside the United States, or substantial damage to the property of a legal entity organized under the laws of the United States (including any of its States, districts, commonwealths, territories, or possessions) while that property is outside of the United States;
>
> **(4)** the offense or the prohibited drug activity occurs in whole or in part outside of the United States (including on the high seas), and a perpetrator of the offense or the prohibited drug activity is a national of the United States or a legal entity organized under the laws of the United States (including any of its States, districts, commonwealths, territories, or possessions); or
>
> **(5)** after the conduct required for the offense occurs an offender is brought into or found in the United States, even if the conduct required for the offense occurs outside the United States.

The "Prohibited acts" section of the indictment sets out certain prohibited conduct which by

itself is not a crime over which the United States can properly assert jurisdiction.  As alleged in the

indictment, neither the drug trafficking activities, nor the terrorist activities, are related to the United

States.  Therefore, the only way that the conduct under 21 U.S.C. § 960a can constitute a crime

against the United States is if the requirements of one or more of the four subject matter

jurisdictional elements under section (b) of the statute are met.  Absent one of the four subject matter

jurisdictional bases, the United States has no jurisdiction over the conduct, and there is no crime against the United States.

Furthermore, absent an averment in the indictment of material facts or circumstances establishing one or more of those jurisdictional elements, there is no way to determine which, if any, of the jurisdictional elements were presented to the grand jury. Without such an averment in the indictment, there is no way to know the nature and cause of the accusations the grand jury relied upon to find that the extraterritorial "narco-terrorism" conduct was a crime against the United States. In short, the jurisdictional elements are an integral part of the definition of the offense under this statute, and therefore must be pleaded in the indictment. See generally, *United States v. Thomas*, supra; *United States v. Superior Growers Supply*, supra; *United States v. Hitt*, supra.

A review of the indictment in this case demonstrates that it fails to allege facts, or even boilerplate statutory language, which satisfies the jurisdictional paragraphs in the statute. The alleged drug trafficking activities are wholly extraterritorial according to the indictment. There is no allegation that drugs were intended to be imported into the United States, or that the conduct was in violation of the laws of the United States. The indictment does not allege that the offense was committed by a national of the United States, or that some other enumerated interest of the United States is implicated.

The defendants' presence in the United States could not have been a basis for jurisdiction at the time of the indictment because the defendants were extradited to the United States well after the indictment was returned. While under United States law, their presence in the United States may confer personal jurisdiction, it does not confer subject matter jurisdiction over the conduct charged

unless one of the other jurisdictional bases is met.  See generally, Brian A. Lichter, "*The Offenses Clause, Due Process, and the Extraterritorial Reach of Federal Criminal Law in Narco-Terrorism Prosecutions*", NORTHWESTERN U. L. Rev.  Vol 103, No. 4 at pp. 1956-1957.[3]

In summary, the indictment in this case does not allege any material facts or circumstances which establish subject matter jurisdiction over the conduct alleged in this case.  The indictment does not allege any material facts or circumstances which establish that the United States has some legitimate interest in prosecuting defendants' alleged extraterritorial "narco-terrorism" conduct. In short, looking within the four corners of the indictment,  no crime against the United States is stated. Thus, there is no basis for a United States court to adjudicate the conduct alleged in this indictment. Even if the Court has jurisdiction over the defendants, it does not have jurisdiction over the alleged offense.  Simply put, the indictment is defective, does not include all elements of the offense, and does not state a crime against the United States.   Accordingly, the indictment must be dismissed.

> **b.   The indictment is defective because it does not put defendants on notice that the conduct is a crime.**

The indictment must include a statement of essential facts that is necessary to provide a defendant with constitutionally required notice of the charges against him so that he can adequately defend himself. See *Russell* at 763;  *United States v. Thomas*, 444 F.2d 919, 922-923 (D.C. Cir. 1971) (burglary indictment insufficient where it failed to allege what felonious intent defendant possessed when making entry); *United States v. Murphy*, 762 F.2d 1151, 1154-55 (1st Cir. 1985)

---

[3]    See also, *United States v. Yunis*, 924 F.2d 1086 (D.C. Cir. 1991)  (holding that court had "personal jurisdiction" over the individual involuntarily brought to the United States, but "universal" principles of jurisdiction and Treaty obligations provided separate subject matter jurisdiction for the hijacking and hostage-taking offenses in which two passengers were United States citizens).

(indictment for threatening official to influence official proceeding insufficient where it identified the threat and official, but not the official proceeding); *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979) ("barren" indictment for marijuana trafficking that alleged only that conspiracy took place in Mexico and Arizona and a date range was insufficient).

Defendants recognize that in some cases an indictment is sufficient if it merely tracks the language of a given statute. *See, e.g., United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976). However, when "the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment charge the offense in the same generic terms as in the definition; but it must state the species - it must descend to particulars." *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971).   For an indictment "to be legally sufficient, [it] must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Superior Growers Supply*, 982 F.2d 173, 177 (6th Cir. 1992).

Requiring that the indictment specify sufficient facts constituting the offense guarantees that the offense that is tried is the same one for which the grand jury indicted. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).   Furthermore, an indictment must contain all of the factual elements of the offense charged, and fairly inform the defendant of the charges against which he must defend.  *See, United States v. Haldeman*, 559 F.2d 31, 164 n. 18 (D.C. Cir. 1976).   The rationale for this requirement is that, under the Sixth Amendment every accused person has a "right .  .  . to be informed of the nature and cause of the accusation .  .  . and after the grand jury has returned its indictment, the charges may not be broadened or amended by the court or the prosecutor

6

only the grand jury itself can do that." *Id*; *See also*, *United States v. Stirone*, 361 U.S. 212, 215 -216 (1960).

The indictment fails to put the defendants on notice because it does not provide any facts or circumstances regarding the "terrorist activity" or "terrorism" prong of the statute. The indictment, as returned, could be referring to terrorism anywhere in the world, no matter how local or isolated the interests of the terrorist organization might be. The indictment could be referring to conduct related to terrorist activities or terrorism which the United States has no legitimate interest in criminalizing. The indictment does not identify an organization, a group, a location, or any specific activities. The indictment does not identify a village, city, state, country, or even continent where the terrorist activities allegedly occurred. As alleged in this indictment, the terms "terrorist activity" and "terrorism" can refer to any terrorist organization or activities – even if the activities only affect a town, a state, or country in some part of the world where the United States has no legitimate interest or concern, and which are only subject to prosecution in that state or jurisdiction.

There are insufficient factual allegations from which this Court can conclude that Congress intended to criminalize the conduct alleged in this indictment. The failure of the indictment to define the terrorist activities or terrorism is a defect that cannot now be cured. If the Court permits the indictment to stand, it will be permitting a prosecution of a "non-offense". In addition, the indictment, as written, provides absolutely no assurance that a conviction against either of the defendants will "arise out of the theory of guilt presented to the grand jury." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109-110 (2007). Thus, the defendants do not have proper notice of

the charges they face and the indictment should be dismissed.[4]

### III.   <u>PROSECUTION OF THE DEFENDANTS VIOLATES DUE PROCESS</u>

The Due Process Clause of the Fifth Amendment precludes the United States from exercising

jurisdiction over Mr. Cuesta Leon and Mr. Romero Mejia.  Even if this Court finds 21 U.S.C. § 960a

constitutional[5], its application must nonetheless comport with the Fifth Amendment.  <u>See</u>, *Boos v.*

*Barry*, 485 U.S. 312, 324 (1988); *Reid v. Covert*, 354 U.S. 1 (1954).  *See also, United States v.*

*Pinto-Mejia*, 720 F.2d 248, 259 (2d  Cir. 1983).

There are two prevailing tests that have been articulated by federal courts to determine

whether application of federal jurisdiction can be applied to a defendant in keeping with the Fifth

Amendment.[6]  The first test, applied by the Second and Ninth Circuits, requires that if a person is to

be tried for extraterritorial conduct, there must be some nexus between the charged activity and the

United States.  See, *United States v. Yousef*, 327 F.3d 56, 111-112 (2d Cir. 2003); *United States v.*

*Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990).  "The nexus requirement is a judicial gloss applied to

ensure that a defendant is not improperly haled before a court for trial . . . .  [It] serves the same

purpose as the 'minimum contacts' test in personal jurisdiction." *United States v. Perlaza*, 439 F.3d

---

[4]  A Bill of Particulars cannot cure such a facially insufficient indictment. <u>See</u> e.g., *United States v. Nance*, Supra at 701 (bill of particulars cannot cure deficiency because, "absent any allegation whatsoever in the indictment as to what the false pretenses were, the United States Attorney would have a free hand to insert the vital part of the indictment without reference to the grand jury. The law does not vest him with such authority.").

[5]  The defendants also allege that the statute is unconstitutional facially and as applied. See, Section IV, infra.

[6]  Defendants are not aware of any cases applying a due process test for the application of 21 U.S.C. Section 960a. All the cases defendants have found address other statutes, many addressing prosecutions under the

1149, 1168 (9th Cir. 2006) (internal citations omitted).  The *Davis* court recommended reference to

the five jurisdictional principles of international law when determining the presence or absence of a

sufficient nexus:

> Universal jurisdiction or "jus cogens" offenses which include "piracy, slave trade, attacks on or hacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism, even where none of the other bases of jurisdiction indicated in § 402 is present." Restatement (Third) § 404 (1987) ;

> Territorial jurisdiction: which allows prosecution of extraterritorial acts that have negative impact on U.S. soil;

> Personal jurisdiction: which allows prosecution of U.S. nationals for crimes committed on foreign soil;

> Passive personal jurisdiction: which allows prosecutions for harm to U.S. nationals or property committed on foreign soil;

> Protective jurisdiction:  prohibits "conduct outside [a nation's] territory that threatens its security as a state or the operation of its governmental functions, provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems." *United States v. Pizzarusso*, 388 F.2d 8, 10-11 (2nd Cir.1968) (quoting RESTATEMENT (Second), Foreign Relations § 33 (1965)).

*See also*, Lichter, *supra*, at 1944 *et. seq.* (discussing five principles of jurisdiction).

The remaining circuits that have decided the issue appear to adhere to what is called the

"notice" test to assure that the requirements of due process are met, although there have been

variations in what the courts have required.  Defendants are not aware of any cases applying a due

process test for the application of 21 U.S.C. § 960a.  Many of the reported cases addressing

extraterritorial due process issues involve the application of the Maritime Drug Law Enforcement

Act ("MDLEA").   Many of the cases involve drug prosecutions as a result of seizures from vessels

---

Maritime Drug Law Enforcement Act ("MDLEA").

on the high seas.  These cases generally dealt with either stateless vessels or vessels where the flag

nation gave consent for the search and prosecution.  *See e.g., United States v. Cardales*, 168 F.3d

548, 553 (1st Cir. 1999)  (when a ship's flag nation has consented to U.S. jurisdiction, a resulting

prosecution must simply not be "arbitrary or fundamentally unfair")   In *Cardales*  the court

determined that the applicability of "protective jurisdiction" rendered the prosecution constitutional.

*Id.  See also,  United States v. Perez-Oviedo*, 281 F.3d 400, 403 (3d Cir. 2002) (fundamental fairness

required where consent to search was given);   *United States v. Suerte*, 291 F.3d 366, 377 (5th Cir.

2002)  (Where flag nation consents to search of vessel, "nexus" is not required to support U.S.

prosecution, presumably adopting "fundamental fairness" test).

 Courts have similarly evaluated the five jurisdictional principles of international law when

reviewing jurisdictional challenges to prosecutions under other statutes.  See, *United States v. Yunis*,

924 F.2d 1086 (D.C. Cir. 1991) (Finding extraterritorial jurisdiction properly exercised under Anti-

hijacking statute where crime was "universal" and two passengers were U.S. citizens).

 This case involves two Colombian nationals who are charged with *wholly extraterritorial*

conduct under 21 U.S.C. § 960a.  The first part of the charge alleges drug trafficking in Colombia,

Venezuela, Suriname, and elsewhere, but *does not allege any activities in or to the United States*.

The second part of the offense alleges that the defendants participated in the drug trafficking

activities knowing and intending to provide anything of pecuniary value to a person or organization

that engages or has engaged in terrorist activities.  The defendants are not United States nationals.

They have never been residents of the United States.  They are not charged with harming, attempting

to harm, or conspiring to harm any United States citizens or any United States' governmental

interest.  They are not charged with a "universal" offense. [7]  Thus, the only basis of jurisdiction that

could arguably apply is "protective jurisdiction".   However, the allegations are far too vague to

make out any recognizable threat to the security of the United States or its governmental functions.

Thus protective jurisdiction can not properly be relied upon here.   Courts have cautioned against

such an expansion of the protective jurisdiction to the point that it allows the United States to

become the world police:

> the notion that [] "protective principle" can be applied to "prohibiting foreigners on
> foreign ships 500 miles offshore from possessing drugs that ... might be bound for
> Canada, South America, or Zanzibar" - as suggested by the Government here - has
> been repeatedly called into question by our Court and others. *United States v.
> Robinson*, 843 F.2d 1, 3 (1st Cir.1988) (Breyer, J.) (questioning the reasonableness of
> a broad reading of the "protective principle" because such a broad reading would
> allow the United States to police any international conduct "against[any] important
> state interests").

*Perlaza*, 439 F.3d at 1162.  *See also, United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir.1995)

("[P]unishing a crime committed on foreign soil ... is an intrusion into the sovereign territory of

another nation. As a matter of comity and fairness, such an intrusion should not be undertaken absent

proof that there is a connection between the criminal conduct and the United States sufficient to

justify the United States' pursuit of its interests."); *See also*, Coangelo, *supra* at 147 ("Thus while

Congress might have a long reach due to the increasingly interconnected global economy, it does not

have the ability to project willy-nilly U.S. law to any conduct of a commercial nature abroad.").

The alleged narco-terrorism conduct by these defendants simply does not have any nexus to

---

[7]   Even the terrorist component of the charge is not recognized as a universal offense.  *See generally*, *United States v. Yousef,* supra at 107-108 (discussing fact that the international community is not close to a consensus on the definition of "terrorism", and therefore it is not a "universal" crime).  *Yousef* also explains that courts cannot *sua sponte* expand the list of internationally recognized universal crimes.  *Id*. at 99.

the United States.  The prosecution of the defendants in this case is not "fundamentally fair", and is

not consistent with the due process clause of the Fifth Amendment.  To allow prosecution of foreign

nationals for conduct on foreign soil, which does not threaten the security of the United States or its

governmental functions, which is not a "universal crime", and which is not supported by any of the

other recognized international law principles, would be arbitrary and fundamentally unfair.

   For these reasons, the prosecution of the defendants violates the Due Process Clause of the

Fifth Amendment to the Constitution, and the indictment should be dismissed.

## IV.  21 U.S.C. § 960a IS UNCONSTITUTIONAL FACIALLY AND AS APPLIED

### a.  The statute unconstitutionally punishes conduct which is not a crime

   Title 21 U.S.C. § 960a is unconstitutional because it punishes conduct which is

not intended to be a crime.[8]  Specifically, the statute criminalizes the following conduct:

> Whoever engages  in conduct that would be punishable under section 841(a)(1) .  .  .
> if committed within the jurisdiction of  the United States .   .   . knowing or intending
> to  provide,  directly  or  indirectly,  anything  of  pecuniary  value  to  any  person  or
> organization that **has engaged** or engages in terrorist activity .  .  .

21 U.S.C. § 960a (emphasis added).

   The statute is unconstitutionally vague because it makes unintended conduct the subject of

criminal prosecution.  While the statute is intended to criminalize drug trafficking activities that

support terrorism, the statute, as enacted, goes well beyond that. *See generally*, Thomas, John,

"*Narco-Terrorism:  Could  the  Legislative  and  Prosecutorial  Responses  Threaten  Our  Civil*

---

[8]  Obviously drug trafficking would still be a crime that could be prosecuted under drug trafficking statutes ,
but this statute permits harsh punishment for "narco-terrorism" under circumstances in which a narco-terrorism

*Liberties?"*, 66 WASH. & LEE L. Rev. 1881, 1913-14 (2009).   First, the language of the statute, as enacted, does not define the conduct Congress set out to prescribe.   Early versions of the bill included language requiring a "drug trafficking – terror" connection. *Id*. at 1898 – 1904. Specifically, the earlier versions included a requirement that the individual know or intend that "such activity" (meaning the drug trafficking activity) provide the resources or support to a person or organization involved in terrorism. *Id*. at 1900.   The final version omitted the "such activity" language.   As a result, the "narco-terrorism" statute does not truly require the "drug- terrorism" nexus intended. *Id*. at 1899-1900.   Instead, it is sufficient if there is proof of drug trafficking activity and separate proof that something of pecuniary value was provided to a terrorist organization. Moreover, the omission of the "drug –terror" nexus seems to have been overlooked when the statute was enacted. *Id*. at 1903.

The result is that 21 U.S.C. §  960a does not have the "drug – terror" link it was intended to have, and it permits the punishment of conduct which was not intended to be the target of this very harsh statute.   For example, X, a young college graduate working a steady job, is photographed selling marijuana at a party.   An investigation into his background reveals that he is an avid supporter of an animal rights group and periodically sends them cash donations. The animal rights group is alleged to **have engaged** in terroristic type attacks in the past.   Such a person is not a drug trafficker who intends by his or her drug trafficking activities to support terror.   Nonetheless, according to 21 U.S.C. § 960a, he or she is a narco-terrorist.[9]

---

crime has not been committed. See generally, Thomas, John, *"Narco-Terrorism: Could the Legislative and Prosecutorial Responses Threaten Our Civil Liberties?"*, 66 WASH. & LEE L. Rev. 1881 (2009).

[9] See, Thomas, John *"Narco-Terrorism: Could the Legislative and Prosecutorial Responses Threaten Our Civil Liberties?"*, *supra* at 1913-14.

In addition, the statute is flawed because it makes no difference under the statute whether the terrorist activities are current or in the past.  As noted above, the statute can be violated if something of pecuniary value is given to a person who "*has engaged*" (meaning in the past) or engages in terrorist activities.   The statute does not establish any reasonable time limitations as to when a person or organization was engaged in terrorist activities or terrorism.  What if the terrorist activity was one year ago, two years ago, five years ago, ten years ago, or perhaps twenty years ago?  There can be little doubt that Congress did not intend to criminalize the conduct of giving something of value to persons involved in terrorism ten or twenty years ago.  Yet that is what the statute does.

Which, if any, of the terrorism time frames mentioned above would pass constitutional muster?  Can it really be a crime to knowingly provide something of value to a person or organization that has engaged in terrorist activities in the past, even if the person or organization was not so engaged at the time the thing of pecuniary value was provided, and had no intention of committing terrorist acts at that time or in the future?  Thus, a prosecution based on the 'has engaged" language criminalizes conduct which may not be a crime, and may not have been intended by Congress to be a "narco-terrorism" crime.  What conduct is prescribed by the "has engaged" language is simply unclear. Therefore the statute violates due process. See, *Colauti v. Franklin*, 439 U.S. 379, 391-95 (1979) ( It is well settled that a criminal statute which fails to give a person fair notice of what conduct is prohibited violates due process).

As noted above, the indictment in this case merely adopts the statutory language, and charges the defendants with engaging in drug trafficking activities "knowing or intending to provide . . . anything of pecuniary value to any person and organization that *has engaged* . . . in terrorist

activity and terrorism." [*See*, Indictment - attached as Exhibit 1]. Since the indictment in this case alleges that the person or organization that received something of pecuniary value "has engaged" (meaning in the past) in terrorist activities or terrorism, the indictment similarly violates due process.

Defendants submit that 21 U.S.C. Section 960a is not constitutionally sound. The absence of an express "drug-terror" nexus, coupled with the "has engaged in" language, makes it unclear what conduct is to be prescribed by the statute. Clearly, as demonstrated by the examples given, it punishes conduct which is not intended to be a crime under the "narco-terrorism" statute. " The void-for-vagueness doctrine requires that the penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983). Since the indictment returned by the grand jury in this case contains the 'has engaged" allegation, it too is unconstitutional. *See*, *Kolender v. Lawson*, supra.

For these reasons the statute is unconstitutional facially and as applied, and the indictment must be dismissed.

b. <u>**Congress Lacked  Authority To  Enact  21 U.S.C. 960a**</u>

Congress exceeded its authority when it enacted 21 U.S.C. § 960a because it is an unconstitutional application of extraterritorial jurisdiction. There are four possible sources of Congressional authority for the passage of a law purporting to regulate conduct outside the territorial borders of the United States. These are: (1) the Offenses Clause; (2) the Necessary and Proper Clause combined with treaty power; (3) the Foreign Commerce Clause; and (4) the general foreign affairs authority of the Legislative Branch. *See* Anthony Coangelo, "*Constitutional Limits on Extraterritorial Jurisdiction: Terrorism and the Intersection of National and International Law*,"

Harv. L. Rev. Vol. 48, No. 1 (Winter 2007) 122 at 136.   None of these bestows the appropriate authority on Congress to pass 21 U.S.C. § 960a.

The Offenses Clause provides that Congress shall have the power "[t]o define and punish... Offenses Against the Law of Nations."   U.S. Const. art. I, sec 8, cl. 10.   In interpreting Congress' authority under this clause, this Court must first determine whether "narco-terrorism" is an Offense Against the Law of Nations.

The intent of the Offenses Clause was to provide Congress the authority to punish those crimes that represented a threat to all nations, and yet would by nature defy prosecution by any - namely piracy.  *See* Coangelo, *supra*, at 142 *et. seq.*   Although the Supreme Court has not strictly limited the Law of Nations to the crime of piracy, *see United States v. Arjona*, 120 U.S. 479 (1887); *Sosa v. Alvarez-Machain*, 542 U.S. 691 (2004), the Clause should not be unmoored from this basic concept: that the offenses clause was meant to reach stateless persons in the name of the protection common interests of the United States and all nations.

At least one commentator has suggested that terrorists, such as Al Queda, have renounced submission to the authority of any state, *see* Coangelo, *supra,* at 145, and that the Offenses Clause therefore provides the authority for the United States to criminalize their extraterritorial conduct. However, the criminalization of a particular motivation for drug dealing that 21 U.S.C. §960a creates, is unsupported by any such justification.  The statute reaches too far, and subjects persons who have not divested themselves of their citizenships to the application of American law within their own countries.  It does not even necessarily reach terrorists themselves, but merely drug dealers who, however incidentally, consider providing a member of a terrorist organization something of

pecuniary value.  Such conduct cannot be said to be against the Law of Nations.

To come within the ambit of the Law of Nations, a law must "rest on a norm of international character accepted by the civilized world and defined with specificity comparable of the 18th century paradigms." *Sosa v. Alvarez-Machain*, 542 U.S.692, 725.  In other words, it must be "gauged against the current state of international law." *Id*. at 733.  The crime of "narcoterrorism" is simply not one that is sufficiently recognized and condemned to be considered against the Law of Nations.   In fact, the entire concept lacks a clear definition.  The notion first arose in the context of Latin American drug cartels that used acts of terrorism to deter official interference with the drug trade.  *See, e.g.*, Emma Bjornehed, *Narcoterrorism: The Merger of the War on Drugs and the War on Terror*, Global Crime, Vol. 6 No. 3 & 4, 305, 306 (Aug.- Nov. 2004).  After September 11, 2001, the concept of narco-terrorism became the tag for the use of illegal narcotics trade to fund separate terrorist enterprise, like the use of opium proceeds to fund the Taliban.[10]  Many more scenarios purportedly falling under the rubric of narco-terrorism have been the subject of scholars.  *See, e.g.*, Thomas, supra n. 2, at 1896 (discussing various definitions of narcoterrorism).  In fact, the Canadian Security Intelligence Service referred to narcoterrorism as "a subject of definitional controversy."  *See id.* at 1886 n. 6 (citing G. Davidson Smith, "Commentary No. 13: Terrorism and the Rule of Law: Dangerous Compromise in Colombia, Canadian Security Intelligence Service, Oct. 1991 at 1).

The crime charged by 21 U.S.C. § 960a still suffers from its own definitional slipperiness.

---

[10] *See DOD Counternarcotics: What is Congress Getting for its Money?: Hearing Before the Subcomm. on Criminal Justice, Drug Policy and Human Resources of the H. Comm. on Goverment Reform*, 108th Cong. 9 (2004) (statement of Rep. Cummings, Member, H. Com. on Government Reform) ("In Afghanistan, where opium production has skyrocketed since American forces removed the Taliban from power, the United Nations Office on Drugs a  Crimes has stressed that the war on terror and the war on drugs are in effect the same war . . .") (cited in *Narco-Terrorism: Could the Legislative and Prosecutorial Responses Threaten Our Civil*

The statute is relatively new, and the core criminality of the "narco-terrorism" statute remains unsettled.  There are no international compacts or treaties  pertaining specifically to narco-terrorism. There is clearly no universal definition of narco-terrorism.  Is the core criminality the narcotics trafficking, the effort to support terrorism, the knowledge that terrorism is being supported, or some combination?   It is interesting to note that the statute does not even require an intent to support a terrorist purpose.  It merely requires knowledge that the person or organization to whom the thing of pecuniary value was provided has engaged in, or engages in, terrorist activities.   However questions regarding the core criminality are resolved, it is clear that the crime can not be said to be against the Law of Nations.

The Necessary and Proper Clause, U.S. Const. art. I, §8, cl. 18, offers no authority, because 21 U.S.C. §960a is not based on a treaty or treaties.   The Foreign Commerce Clause, U.S. Const. art. I, § 8, cl. 3. is inapplicable because there is no provision whatsoever in the statute that either the narcotics trafficking component or the terrorism component has any economic impact on the United States. [11]   Finally, "inherent foreign policy power", as recognized in *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936), is doctrinally unstable.[12]   While Congress has the authority to protect American interests abroad,  *See e.g., United States v. Bin Laden*, 92 F.Supp. 2d 189, 221

---

*Liberties?,*  Supra at 1882 n.4.

[11] In order to find succor in the Foreign Commerce Clause, surely the connection of the activity to the United States economy would have to be at least as strong as that required under the Interstate Commerce Clause, which the Court has limited in recent years.  *See* Brian Lichter, *The Offenses Clause, Due Process, and the Extraterritorial Reach of Federal Criminal Law in Narco-Terrorism Prosecutions*, NORTHWESTERN L. Rev., Vol. 103, No. 4 (2009) 1929, 1933 at n. 22 (discussing narrow reading of domestic commerce clause reflected by *United States v. Lopez*, 514 U.S. 549 (1995)).

[12] The source of this power remains in judicially murky water. *See Coanglo*, *supra,* at 156.

(S.D.N.Y. 2000),  this is not a foreign policy statute, and the use of this power to justify the enactment of 21 U.S.C. § 960a would be improper.

The provisions of 21 U.S.C. § 960a that provide for its extraterritorial application are thus invalid because Congress did not have the power to enact such a law and the indictment should be dismissed.


## V.  CONCLUSION

The indictment in this case is constitutionally infirm, and must be dismissed.  First, the indictment is defective because it does not allege all the elements of the offense; does not state an offense against the United States;  does not put defendants on notice that the conduct is a crime, and therefore does not comport with the requirements of the Fifth and Sixth Amendments to the United States Constitution.  Second, the extraterritorial application of 21 U.S.C. § 960a in this case violates the Due Process Clause of the Fifth Amendment.  Third, 21 U.S.C. §960a is unconstitutional facially, and as applied in this case, in part because Congress exceeded its authority to legislate the particular extraterritorial "narco-terrorism" conduct.

Defendants respectfully request a hearing on this motion.

Respectfully submitted,

Law Office of  Howard B. Katzoff
            /s/
        _____
By:     Howard B. Katzoff
        D.C. Bar # 348292
        717 D Street, NW Suite 310
        Washington, D.C. 20004
        (202) 783-6414
        *Counsel for Jose Fernando Romero Mejia*

        and


        Law Office of A. Eduardo Balarezo
            /s/
        _____
By:     A. Eduardo Balarezo
        D.C.  Bar # 462659
        400 Fifth Street, NW Suite 300
        Washington, D.C. 20001
        (202) 639-0999
        *Counsel for Josue Cuesta Leon*




**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing Defendants' Joint Motion To Dismiss

Indictment and attached Memorandum In Support Thereof was served by electronic case filing

on government counsel and all parties of record this   5th   day of   July  , 2010.

        Law Office of  Howard B. Katzoff
            /s/
        _____
By:     Howard B. Katzoff

20